FARMERS' NAT. BANK OF FRANKLINVILLE *v.* VAN SLYKE *et al.*

(*Supreme Court, General Term, Fifth Department.* June 23, 1888.)

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—CONCEALMENT—QUESTION FOR JURY.

In an action against the indorser of promissory notes made by V., there was evidence tending to show that plaintiff held four of V.'s notes on which the name of an indorser was forged; that on investigation, and finding V. to be insolvent, plaintiff's cashier went with V. to obtain defendant's indorsement, at which time V. falsely represented, though not in the cashier's presence, that his notes were due, and that A. had been indorser upon them, but, owing to a dispute with him, V. did not desire to ask A.'s indorsement to renewal notes; that at the interview between defendant, the cashier, and V., at which the notes in suit were made and indorsed, it was said that they were in renewal, but nothing was said of the forgery, of which defendant was ignorant; that the cashier afterwards informed defendant that it was rumored that the old notes were forged, but it was false; that defendant made immediate inquiry, and, on learning of the forgery, notified plaintiff that he did not consider himself liable. Plaintiff retained the old and new notes. *Held,* that it should have been submitted to the jury, to determine whether the cashier did not have reason to believe that defendant was deceived into indorsing the notes, in which case his indorsement would be void.

On motion for new trial on exceptions ordered to be heard at general term in the first instance.

Action by the Farmers' National Bank of Franklinville against Van Slyke and Snyder upon two promissory notes made by Van Slyke and indorsed by Snyder. At the conclusion of the evidence the court directed a verdict for plaintiff, and Snyder moved for a new trial.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

*Alfred Spring,* for plaintiff. *A. D. Scott,* for defendant.

HAIGHT, J. This action was brought to recover the amount of two promissory notes made by the defendant Van Slyke and indorsed by the defendant Snyder. The evidence taken upon the trial tends to show that the plaintiff was the holder of four notes made by the defendant Van Slyke, amounting to the sum of $664; that upon each note there was the name of an indorser, which turned out to be forged; that the officers of the plaintiff's bank, after learning of the fact that the names of the indorsers were forged, investigated the financial condition of the defendant Van Slyke, and found him to be insolvent. The plaintiff's cashier, Weed, then called upon him, and told him he must furnish additional security. Thereupon they went to neighbors of Van Slyke, who refused to indorse for him. Thereupon the defendant Van Slyke suggested that the defendant Snyder, who lived at Yorkshire Centre, some miles distant, might indorse for him. Thereupon he, in company with Weed, the plaintiff's cashier, took the train, and went to Yorkshire Centre. The defendant Snyder being at work in the woods, Weed remained at the hotel, while Van Slyke went for him, and brought him to the hotel where Weed was. That at the interview between Van Slyke and Snyder, in the woods, and on their way to the hotel, Van Slyke stated that one Mr. Adams, a director of the bank, had been his indorser. That his notes had become due, and he wanted to renew them at the bank. That he had had some little difficulty with Adams in reference to a store account, and did not like to ask him to again indorse for him; whereas, in truth and in fact, Adams had not in-

dorsed for him, and the notes at the bank were not due.   On arriving at the hotel, the subject was talked over, but just what was said in Weed's presence Snyder was unable to remember, but did recollect that it was talked about the notes being given in renewal.   Nothing was said about the notes having been forged, and that fact was unknown to the defendant Snyder.   Weed drew the two notes in suit.   They were signed by Van Slyke, and indorsed by Snyder, and Weed took them and returned to the bank.   He was there questioned by Adams, the director, as to whether he informed Snyder of the forgeries, and stated that he did not.   That Adams thereupon directed him to return to Snyder's, and inform him of that fact.   That on the same evening Weed returned to Yorkshire Centre, and there told Snyder that it was rumored that the notes in the bank were forgeries, but said that it was not so; that they were all right.   Immediately thereafter the defendant Snyder made inquiry, and, after finding that the indorsers' names upon the notes had been forged, he goes to the bank on the following Monday, and notifies the cashier of that fact, and stated to him that he should not consider himself holden on the notes; that "it was a snap game, to get him to indorse the notes."   The bank retained the new notes, as well as the old notes, upon which the names of the indorsers had been forged.   At the conclusion of the evidence, the defendant requested the court to submit to the jury the following questions:  *First,* that the plaintiff was guilty of a fraud in procuring the indorsement of the defendant Snyder to the notes in suit; *second,* that the plaintiff was guilty of a fraudulent concealment of facts which were unknown to the defendant Snyder at the time he indorsed the notes, as would render the indorsement void in the hands of the plaintiff; *third,* that there was no consideration for the indorsement, and the plaintiff was not a *bona fide* holder of the notes in suit, under the circumstances disclosed by the evidence, so far as the defendant Snyder is concerned.   The court declined to submit to the jury any of the propositions so requested, but held that there was no question of fact in the case for the jury, and directed a verdict for the plaintiff for the amount due and unpaid upon the notes; to which ruling and direction the defendant excepted.

The serious question presented is whether there was not a withholding of facts by the cashier of the plaintiff which he was in duty bound to make known to Snyder before accepting him as an indorser upon the notes.   The rule upon this question is variously stated by different authors, and the authorities upon the subject are not all in strict harmony.   In 1 Story, Eq. Jur. § 215, it is stated that, "if a party taking a guaranty from a surety conceals from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions as to the real state of the facts, such a concealment will amount to a fraud, because the party is bound to make the disclosure; and the omission to make it under such circumstances is equivalent to an affirmation that the facts do not exist.   So, if a party knowing himself to be cheated by his clerk, and concealing the fact, applies for security in such a manner, and under such circumstances, as holds the clerk out to others as one whom he considers as a trustworthy person, and another person becomes his security, acting under the impression that the clerk is so considered by his employer, the contract of suretyship will be void."   Morgan, in his American notes in Decolyar on Guaranties, p. 369, says: "A person cannot be considered as guilty of a fraud by omitting to make known facts of an important character affecting the risk of the surety, when it does not appear that he had an opportunity to do so.   But if he does know such facts, and has reason to believe that they are not known to the proposed surety, if information be sought from him, or if he have a suitable opportunity, and the facts are of such a character that they are not found in the reasonable or usual course of that kind of business, and are such as to materially increase the risk, it is his duty to make them known.   *  *  *"   And again, at page 370:

"To receive a surety known to be acting upon the belief that there are no unusual circumstances by which his risk will be materially increased, well knowing that there are such circumstances, and having reasonable opportunity to make them known, is a legal fraud, for which the surety will be relieved from the contract." Daniel, in his work on Negotiable Instruments, vol. 2, § 1309, says: "The contract of suretyship is a contract *uberrimæ fidei*. Therefore, where one is induced to become surety for another, as drawer of a bill, or indorser of a note for accommodation, or otherwise, and there is any misrepresentation or fraudulent concealment of a material fact, which, if known, would have induced the drawer or indorser or other surety not to enter into the contract, his contract is void from the beginning, as between the surety and all parties privy to such misrepresentation or concealment." In the case of *Stewart* v. *Small*, 2 Barb. 559, it was held that, "where a person's signature to a note as surety for another is obtained by fraud and false pretenses, that circumstance avoids the note in the hands of the holder who has received the same without paying any consideration therefor; that it cannot be said that a person has parted with value for a note when he has only given credit for the amount of it upon a paper which he knew to be of no value." In the case of *Farrington* v. *Bank*, 24 Barb. 554, it was held that, "where the plaintiff was induced by false and fraudulent representations of the drawer of bills of exchange to indorse the same for his accommodation, and the bills were thereupon delivered to the cashier of a bank which then held protested drafts drawn by the same drawer upon the same drawees, there being no agreement between the drawer and the cashier that the new drafts would be received by the bank in payment of the protested drafts, but the same were procured by the drawer and delivered to the cashier with the intention that they should be held as additional and collateral security to the protested bills, and the new drafts were subsequently passed to the credit of the drawer on the books of the bank, and he was charged with the protested bills, which still remained in its possession, the indorsement was deemed void, and the bank was not entitled to protection as a *bona fide* holder." It was also held that "the plaintiff might maintain an action against the bank, before the maturity of the bills, to have the indorsement declared void in its hands, and to restrain the collection of the bills, and have the indorsement erased therefrom." In the case of *Bostwick* v. *Van Voorhis*, 91 N. Y. 353–360, EARL, J., in delivering the opinion of the court in that case, says: "Bartow was teller of the bank before he was appointed cashier thereof, and it is claimed that the directors, before his appointment as cashier, were aware of certain misconduct of his as teller, which they concealed from the sureties, and which they were bound, acting in good faith, to have made known to them. It is undoubtedly true that if the directors had knowledge that Bartow had been dishonest and unfaithful in his office as teller they were bound to apprise the sureties of the fact; otherwise they could not hold them." See, also, *Bank* v. *Cooper*, 36 Me. 179–195; *Bank* v. *Brownell*, 9 R. I. 168–175; *Evans* v. *Keeland*, 9 Ala. 42–48; *Owen* v. *Homan*, 4 H. L. Cas. 1033, 1035, (1852–1854.)

It will be observed that from what has been held and written upon the question, that it is not clear, or always easy to determine, just what facts or circumstances make a case in which it is the duty of a person taking security from another to make known to the proposed surety the facts of the case, and thus warn him of his danger. But it appears to us that where a person taking security knows the facts, and is personally present, having an opportunity to inform the proposed surety, and having reason to believe that the proposed surety does not know the facts, and is being deceived and defrauded into becoming such, it is his duty to post him, and the acceptance of him as surety or indorser, under such circumstances, would be a fraud which would avoid the contract. In the case under consideration, Weed, the cashier, knew of the forgeries. Nothing was said about the forgeries in the presence of

Snyder. All questions as to inferences to be drawn from the facts were for the jury, and it appears to us that the evidence was sufficient to raise a question for the determination of the jury as to whether Weed did not have reason to believe and understand that Snyder was being defrauded and deceived into indorsing the notes in suit to renew the notes at the bank, believing them to be good and valid notes then due, given in the ordinary course of business, by a man in good standing at the bank. The motion for a new trial should be granted, costs to abide event. So ordered.

BRADLEY and DWIGHT, JJ., concurred.