The United States Life Insurance Company in the City of New York, Appellant, *v.* Charles Salmon and Others, Respondents.

*Principal and surety — an obligee must disclose to proposed sureties a prior defalcation by the principal.*

Where an obligee takes a bond as security for the fidelity of his agent, who, to the knowledge of the obligee, has previously violated the trust reposed in him, and the obligee does not disclose such misconduct to the sureties, he is guilty of the fraudulent concealment of a material fact, which good faith requires him to disclose, and he cannot recover of the sureties the damages resulting from a subsequent default of his agent.

Appeal by the plaintiff, The United States Life Insurance Company in the city of New York, from that part of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 10th day of April, 1895, upon the report of a referee, which dismisses the complaint in the action upon the merits as to the defendants Charles Salmon and Moses B. Shantz.

This action was begun June 2, 1894, to recover of William Manning and Charles E. Manning, principals, and Charles Salmon and Moses B. Shantz, sureties, on a bond, under seal, executed November 13, 1893, to the plaintiff whereby the obligors undertook that

the principals, who were the plaintiff's agents, should pay over all moneys theretofore received and thereafter to be received by them as agents, and that they should pay all debts then owing and thereafter incurred for moneys advanced to them and should faithfully discharge their duties as agents.

The referee held that the agents, the principals on the bond, were indebted to the plaintiff in the sum of $3,769.48, the amount claimed in the complaint, and a judgment was entered against them therefor, with costs. From this part of the judgment no appeal has been taken. Two thousand and ten dollars and sixty-seven cents of this sum were for moneys owing by the principals to the plaintiff prior to the execution of the bond and $1,758.81 were for moneys received by the principals as agents after the execution of the bond, which they neglected to pay over to the plaintiff.

The referee found :

"*Ninth.* The said Mannings, while agents of the plaintiff as aforesaid, at various times between the months of May and November, 1893, embezzled large sums of money belonging to the plaintiff which came into their hands as such agents. The plaintiff's officers, including its secretary who accepted the bond described in the complaint herein, well knew these facts weeks before the execution of said bond, and the said secretary had plenty of opportunity to communicate them to the defendants Salmon and Shantz before they signed said bond.

"*Tenth.* The defendants Salmon and Shantz had no knowledge of said embezzlement, or that either of said Mannings had been guilty of any dishonesty. *They signed the said bond without consideration, solely to accommodate said Mannings, and relying upon their honesty.*"

As conclusions of law he found :

"*First.* That it was the duty of the plaintiff to inform said Salmon and Shantz of the said embezzlement by the said Mannings, before accepting from them the said bond.

"*Second.* That said bond is as to the defendants' Salmon and Shantz void.

"*Third.* That the complaint should be dismissed upon the merits as to the defendants Salmon and Shantz, with costs to them against the plaintiff. "

Upon the report a judgment was entered in favor of the sureties and against the plaintiff, with costs, from which the plaintiff appeals.

*O. P. Buel,* for the appellant.

*J. B. M. Stephens,* for the respondents.

FOLLETT, J. :

The plaintiff excepts to the ninth finding of fact, to so much of the tenth as is printed in italics, and to the three conclusions of law. No other exceptions were filed.

It must be conceded that if the findings of fact excepted to are sustained by the evidence, the judgment must stand, unless there were erroneous rulings on the admission or exclusion of evidence.

It is well settled that in case an obligee takes a bond as security for the fidelity of his agent, who, to the knowledge of the obligee, has previously violated the trust reposed in him, and the obligee does not disclose the misconduct to the sureties, he is guilty of a fraudulent concealment of a material fact, which good faith requires the disclosure of, and he cannot recover of the sureties. (*Howe Machine Co.* v. *Farrington,* 82 N. Y. 121; *Bostwick* v. *Van Voorhis,* 91 id. 353; *Atlantic & Pacific Telegraph Company* v. *Barnes,* 64 id. 385; *Ludekins* v. *Pscherhofer,* 76 Hun, 548; *Farmers' National Bank* v. *Van Slyke,* 49 id. 7.)

The plaintiff's president and secretary testified that in June, 1893, the Mannings were short in their account $5,000 for moneys collected and not paid over. This defalcation was settled July 8, 1893, by the promisory note of the sureties on a previous bond. This note fell due October 11, 1893, and was protested for nonpayment. In the latter part of October, 1893, the secretary investigated the affairs of the agency, and found the Mannings short $8,806.55. On the 4th of November the secretary took possession of the office of the Mannings, and of all the policies, renewal receipts and papers, and refused to allow them to act as agents until the deficiency was secured to be paid, and the bond in suit furnished. The deficit was secured by mortgages on the property of the sureties for $8,500, and the balance was paid in cash.

This being done and the bond in suit having been delivered November 14, 1893, the affairs of the agency were turned over to the Mannings. The plaintiff's secretary knew that the Mannings were endeavoring to induce Salmon and Shantz to become sureties on a new bond which was drafted by him, but he did not disclose to them the previous defalcations of the Mannings. This was not good faith. The defalcations of June and of October, 1893, were not different in character from those occurring after November 14, 1893, and disclosed by the account of April 15, 1894. The evidence shows that when the securities executed the bond they had no knowledge of the previous defalcations and misconduct of the Mannings, nor had they any information which should have caused them to inquire in respect to their conduct.

The ninth and tenth findings are amply supported by the evidence. The plaintiff's president was asked by his counsel if, before he went to Rochester in April, 1894, he believed the Mannings were honest. This question was objected to by the respondents' counsel, and was excluded. The president had full knowledge in June, 1893, and in November, 1893, of the manner in which the Mannings had conducted their business. He knew they were defaulters in considerable sums, and it was not competent for him to characterize their conduct either as honest or dishonest. In the face of these facts his opinion or belief as to the integrity of the agents was entirely immaterial. The new sureties were entitled to know the facts, and it was for them to judge whether they would become responsible for the fidelity of these agents who had been found so unfaithful. The respondents were not allowed to testify to communications made to them by the Mannings in the absence of the plaintiff's officers, but were simply allowed to prove that the Mannings did not inform them of their previous defalcations and indebtedness to the plaintiff.

The judgment is right, and should be affirmed, with costs.

Van Brunt, P. J., and O'Brien, J., concurred.

Judgment affirmed, with costs.