BROWN v. JAMES et al.

(Supreme Court, Appellate Division, Second Department. February 18, 1896.)

1. NOTES—BONA FIDE HOLDER—CONFLICTING EVIDENCE.

The indorser of a note having, in an action thereon by the payee, proved fraudulent representations of the maker in obtaining the indorsement, and thus put on plaintiff the burden of proving that he became possessed of the note under such circumstances as authorized him to enforce it, it was error to direct a verdict for plaintiff; there being testimony tending to defeat it in his hands, as well as testimony tending to sustain it, all coming from interested parties.

2. APPEAL—SUFFICIENCY OF CASE.

A certificate that the case on appeal contained all the evidence is not necessary to authorize consideration of an exception to a ruling of the court in directing verdict.

Appeal from city court of Yonkers.

Action by Timothy Y. Brown against Joshua James and another on a promissory note. From a judgment entered on a verdict in favor of plaintiff rendered by direction of the court, defendant Gibbons appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

William C. Kellogg, for appellant.

John F. Brennan, for respondent.

HATCH, J. Defendant James was indebted to plaintiff for the balance of an open account, which had been some time due, upon which he was threatening suit for collection. The claim was in the hands of plaintiff's attorney, and James applied to him for an extension. Thereupon the attorney informed James that if he would procure security they would not "push" him, but would let it stand. James then applied to the defendant Gibbons to indorse his note for a sum equaling the claim, stating to him, as an inducement for his indorsement, that he wanted to use it to buy horses in Canada. Relying upon this representation, Gibbons indorsed the note and delivered it to James, and he immediately delivered it to the attorney. When the note fell due, it was not paid. A renewal note was executed, which is the one in suit. This constitutes the entire transaction. At the close of the case, upon motion of plaintiff's counsel, the court directed a verdict for the amount of the note, and defendant excepted.

It appears that James bought no horses, and a jury would have been authorized to find that he fraudulently misrepresented his intention in that regard, in order to procure the indorsement of the note. Bank v. Van Slyke, 49 Hun, 7, 1 N. Y. Supp. 508; Hart v. Palmer, 12 Wend. 523. It is insisted, however, that plaintiff is a bona fide holder for value, without notice of the misrepresentation of James, and, in consequence, is not affected thereby. It may be assumed that plaintiff had no notice of the circumstances surrounding the giving of the indorsement. But this would not be sufficient, alone, to entitle him to recover. In Insurance Co. v. Church, 81 N. Y. 218, it was held that in order to constitute an indorsee of negotiable paper a holder for

value, of such paper, sufficient to exclude the equities of antecedent parties, it must not only have been valid between the indorser and indorsee, but the latter, in addition thereto, must have given value, parted with some right, or incurred some responsibility upon the faith of the paper, at the time of the transfer.   Plaintiff seeks to avoid the force of this rule by claiming that he falls within it.   In this regard, his claim is that there was a renewal note made by James, and indorsed by one Smith, upon which time of payment was extended, and the primary note canceled, which was the surrender of a right.   This claim is not supported by testimony.   It does not appear that there was any extension of the note indorsed by Smith upon the faith of the note indorsed by Gibbons.   Curran, who represented plaintiff's attorney, and proposed to James that he should get an indorsed note for the unpaid balance, states that James said something about a note indorsed by Smith, and that he had been to see Brown about it several times, and that he (James) would like to have that note straightened up.   He was then asked: "Q. Do you know whether or not that note was extended?   A. I heard it was extended."   It does not appear from this testimony that the present note had any connection whatever with the Smith note, or that a part of its consideration was an extension of that note.   On the contrary, all of Curran's talk with James related to the unpaid balance.   If, however, the Smith note had anything to do with it, Curran only knows what he had heard, which availed nothing.   The examination of plaintiff upon this subject is significant.   He testified that there were two notes indorsed by Smith, and he was asked: "Q. What was the arrangement as to the extension of credit on that note, if he should come in, to cover this note here?   A. I wouldn't be sure about that.   Q. Was that as Mr. Curran has stated?   Did you hear his statement of it?   Do you recall what it was?   Was there an extension given on the Smith note?   A. Yes."   It is quite evident that plaintiff had little, if any, knowledge that the Smith note had anything to do with the transaction, and an attempt was made to make Curran's lack of knowledge a basis upon which plaintiff could found an extension.   This palpably failed, and it was with difficulty that plaintiff was brought to testify to an extension.   But when he did it was nowhere made to appear that the extension had any connection with the giving of the present note or its original.   Upon this point, therefore, the evidence was insufficient. It is further claimed that the amount of the debt was abated, as a consideration for the note.   But Curran does not state that he abated anything of the claim, and the amount of the note equaled the amount that he held for collection.   Plaintiff states that James owed him more than the amount of the note.   But he also states that this balance had been agreed upon about a year before any note was given. No abatement was made of any legal demand which plaintiff held against James.   And finally it is claimed that the surrender of the primary note furnishes a good consideration, and constitutes a parting with value legally sufficient.   It may be answered that the original note was never surrendered, and remained in plaintiff's possession at the time of the trial.   He states that he offered it to James, but

that he did not take it, and Gibbons never had an opportunity. However this may be, it is well settled that, if the original note be illegal, the renewal thereof is open to the same defenses, unless the illegality be cured or waived. 1 Daniel, Neg. Inst. (4th Ed.) § 205, p. 229; Bank v. Lewis, 75 N. Y. 516. When proof of the fraudulent misrepresentation had been given, the burden was upon plaintiff to establish that he became possessed of the note under such circumstances as authorized him to enforce it. Bank v. Green, 43 N. Y. 298; Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402. The testimony which tended to defeat the note in plaintiff's hands, and the testimony which tended to sustain it, came from interested parties, and thus presented a case eminently for the jury, and it should have been submitted to them for their determination. Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602. A certificate that the case contained all the evidence was not essential to present the exception taken to the ruling of the court. Halpin v. Insurance Co., 118 N. Y. 165, 23 N. E. 482; Winter v. Railroad Co., 8 Misc. Rep. 362, 28 N. Y. Supp. 695.

The judgment should be reversed, and a new trial ordered; costs to abide the event. All concur.