BURLEW v. FIDELITY & CASUALTY CO.
OF NEW YORK.
No. 6221.

Circuit Court of Appeals, Sixth Circuit.
May 12, 1933.

Thomas E. Sandidge, of Owensboro, Ky. (Thomas E. Sandidge, W. P. Sandidge, and Sandidge & Sandidge, all of Owensboro, Ky., on the brief), for appellant.

E. B. Anderson, of Owensboro, Ky., for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The proceeding below was a suit by the owner against the surety on a building contractor's bond for the construction of a residence and garage. He appeals from a decree dismissing the petition.

On November 12, 1927, the owner entered into a written contract with one L. A. Monarch, contractor, for the construction of a residence and garage in Owensboro, Ky., for the sum of $34,000. On the same day the contractor furnished a bond, with the surety as indemnitor, in the sum of $34,000, conditioned upon the faithful performance of the building contract incorporated in and made part of the bond. After the completion of the buildings, and their occupancy by the owner, minor defects began to appear therein, which were called to the attention of the contractor, who undertook to remedy them. No notice was given to the surety. In the spring of 1929 more serious weaknesses developed. The owner then had the buildings examined by experts, and it was discovered that the contractor had entirely omitted installation of certain materials, substituted cheaper and inferior material for that called for, performed in an unworkmanlike manner, and otherwise failed to comply with the contract. The owner thereupon notified the surety in writing on April 5, 1929, of the conditions disclosed, and called upon it to indemnify. After a number of conferences and inspections of the premises, the surety made an offer of settlement, which was declined. The controversy was then submitted by the owner to the architect as arbitrator. The latter made a finding that the contract had not been performed according to its terms, and that the owner was entitled to recover $23,-347.00 as damages. The surety refused to recognize the award, and suit followed.

The first question to be decided, and, if the court below is correct, the only question,

is whether the owner's suit was timely within the terms of clause 4 of the bond, which provides: "Legal proceedings for recovery hereunder may not be brought unless begun within twelve months from the time of the discovery of the acts or omission of the principal on account of which claim is made."

Disregarding minor defects, of which no notice was given to the surety, April 5, 1929, is concededly the latest date which can be claimed by the owner as the time of discovery of the contractor's breach. Suit was brought August 7, 1930, approximately sixteen months thereafter. The owner contends that the limitation period was waived, or at least that the surety is estopped by its conduct from relying upon the limitation clause in the bond. The surety, he says, lulled him into a sense of security that the limitation of time for bringing suit would not be relied upon by entering into negotiation for settlement, and causing its representatives to state that the matter would be settled.

The validity of provisions such as the one here involved, and the principles governing their waiver, were carefully considered by this court in Reynolds v. Detroit Fidelity & Surety Co., 19 F.(2d) 110. The conclusions there reached were that reasonable provisions limiting the time for suit are valid, and, unless waived, are binding upon the parties; that the burden of proof is upon the party claiming a waiver; that, in the absence of conduct creating an estoppel, the waiver must be supported by an agreement founded upon a valuable consideration; that there can be no waiver unless so intended by one party and so understood by the other. But, when a party has so acted as to mislead the other, he is estopped thereby, provided such conduct is the cause of delay in commencing suit.

Both parties pay the tribute of citation to Judge Knappen's opinion in the Reynolds Case as containing a correct statement of the law with regard to estoppel. They differ upon the application of the law to the facts. In support of his claim of waiver, the owner relies upon the following circumstances: In reply to his notice of April 5, 1929, advising it of the breach, the surety, by letter of April 25, 1929, advised the owner that it had referred the complaint to its representative, Mr. J. A. Hogan, of Louisville, for attention, and that Mr. Hogan had been instructed to arrange a meeting with the owner and contractor for the purpose of making inspection and investigation. Thereafter the owner called upon Mr. Hogan and conferred with him and Mr. Quick, another representative of the surety. At this conference Mr. Hogan advised him that "they (the surety) wanted to settle the thing—if there was any damage they would satisfy it." This was in May of 1929. In June Mr. Littell, a local contractor, made an inspection for the surety. In September Mr. Nelson, the surety's resident manager, wrote J. C. Rudd Son & Co., its local agents at Owensboro, that he and Mr. Hogan would come to Owensboro and make a complete investigation of the matter and see what was necessary to be done; that it seemed to him that the contractor, architect, owner, and surety should get together, see what the trouble was, and endeavor to straighten it out. This letter was shown to the owner by Rudd. Pursuant to the letter Mr. Nelson came to Owensboro in October and made inspection. Upon returning to Louisville, he wrote the owner that he had sent a memorandum to the surety's claim department, and that he expected reply the following week, when the matter would receive attention. On November 8, 1929, Mr. Quick came to Owensboro and arranged for a meeting at the hotel with the owner, contractor, architect, and a Mr. Hoffman, who had inspected the buildings. On November 23, 1929, the owner received a letter from the surety's attorney in Owensboro proposing that another contractor make an inspection of the buildings for the surety, and that, after receiving report, "the probabilities are that they would be in a position to get rid of this matter." Upon the owner's objection to the surety's choice, another architect was sent to make examination. Following his report, the surety in March, 1930, offered to settle for $1,000, which offer was rejected. Shortly thereafter the period of limitation expired, but negotiations for settlement continued. The matter was referred by the owner to the architect as arbitrator some time in June, 1930. Report was made on July 29th, repudiated by the surety on August 1st, and suit begun August 7th. Upon the basis of these circumstances the owner claims that the surety (1) held out reasonable hopes of adjustment, (2) left the question of settlement an open one, (3) and induced the owner to delay in bringing suit to enable it to investigate the claim, and that by such conduct an estoppel was created within the rule of the Reynolds Case.

The appellant contends that the circumstances thus enumerated establish estoppel. Philadelphia Company v. Thacher, 236 F. 869 (C. C. A. 1); United States v. Fidelity & Deposit Co. (C. C. A. 2) 224 F. 866; Green Star S. S. Co. v. Nanyang, 3 F.(2d) 369 (C. C. A. 9); Lynchburg, etc., Co. v. Travelers'

Insurance Co., 149 F. 954, 9 L. R. A. (N. S.) 654 (C. C. A. 4); De Farconnet v. Western Insurance Co. (D. C.) 110 F. 405. But compare Southern Pacific Co. v. Stewart, 248 U. S. 446, 39 S. Ct. 139, 63 L. Ed. 350. These circumstances are to be considered, too, in connection with other pertinent facts now to be stated. In September, 1929, the owner withdrew all of his insurance business from the surety. This seems hardly consistent with reliance upon the surety to make an amicable settlement. In October, 1929, immediately after the inspection of the premises by Mr. Nelson, the owner, through his attorneys, notified the surety that he had been damaged to the extent of $20,000, demanded settlement by November 15th, and threatened suit. This was the first notice to the surety of the amount claimed by the owner. Certainly the owner was not relying upon express or implied promise of settlement when threatening suit to enforce his demands. The suit was not then instituted. What followed is important. At the November 8th conference between the owner and representatives of the surety, it was explained to the owner that the defects in the buildings were due to irregular brick and shrinkage, over which the contractor had no control, and that the surety did not feel there was any liability. Here was direct and unequivocal denial of responsibility. That it was so understood by the owner is clear from what followed. The owner replied that he thought the meeting had been called to discuss a settlement of his claim; that, if the surety's representatives were not prepared to do so, the meeting might as well adjourn. Thereupon the conference broke up. We think this incident to be a complete negation of the owner's contention that he was deceived into believing that the surety would make an amicable settlement on any such basis as the owner contended for. There was nothing in subsequent negotiations that indicates otherwise. At the time of the threatened suit, the period of limitation had still five and one-half months to run. At the time of the surety's denial of liability and the breaking up of the November 8th conference there were still nearly five months in which to sue. But this is not all. In March, 1930,

the surety offered $1,000, and the owner claimed $20,000. Certainly if there were any doubt as to the surety's position with respect to settlement upon the basis claimed this doubt must have been finally dispelled at the time. There were still some days (perhaps weeks) in which the owner might have sued. He did not. We think, in view of all of the circumstances, that the court below was right in holding against the plaintiff's claim of estoppel.

The building contract provided that any differences of opinion between owner and contractor about the materials or work that had been furnished or performed should be submitted to the architect for decision. We assume the validity of this provision, and that the bond must be read in pari materia with it. We fail to see, however, how this either vitiated or extended the period of limitation. The owner knew that the contract had not been performed on April 5, 1929. The contractor denied responsibility from the beginning. The owner knew as early as November 8th of that year that the surety denied liability. There was still ample time to obtain the decision of the architect on matters in dispute. Actually the architect consumed approximately a month in arriving at decision. Presumably, under pressure from the owner, this time might have been shortened. In any event, there was ample time to obtain his decision and to sue after differences of opinion between owner and contractor, or owner and surety, developed.

It is to be noted that the suit, while begun at law, was, owing to difficulties of proof, transferred below to the equity side of the court. We know of no precedent for such transfer on that ground. No complaint is made of it, however, and, whether we treat the suit as one in equity or one at law in which a jury was waived, the record is complete upon the single issue discussed, and we see no reason for refusing to decide it. It is to the interests of all concerned that an end be put to the litigation.

The decree of the District Court is affirmed.