**JOHN M. KELLEY CONTRACTING CO. v. UNITED STATES FIDELITY & GUARANTY CO.**

(Circuit Court of Appeals, Third Circuit. February 1, 1922.)

No. 2755.

**1. Principal and surety ⬅149—Provision of bond limiting time for bringing action against surety held valid.**

In a bond given to secure performance of a contract containing provisions which enabled the other party to demand full performance within approximately 90 working days, a provision limiting the time for bringing action against the surety to one year from the date of the bond *held* valid.

**2. Principal and surety ⬅149—Right of action on bond held to have accrued on default of principal.**

Where a contractor defaulted and abandoned the contract, and his surety on demand refused to complete performance, a right of action in favor of the obligee on the bond *held* to have accrued at once, though the amount of damages was not then ascertainable.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by the John M. Kelley Contracting Company against the United States Fidelity & Guaranty Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Bleakly & Stockwell, of Camden, N. J., for plaintiff in error.
Lewis Starr, of Camden, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. From a study of the record in this case, it appears that the plaintiff, John M. Kelley Contracting Company, a corporate citizen of New Jersey, was engaged in building a public highway in that state. On May 29, 1919, Elmer Barber duly contracted in writing with that company to deliver to it—

"approximately forty-five thousand tons of road building material. Sand and stone to be unloaded and hauled and dumped at intervals convenient for

.your mixing gang. * * * I am to deliver approximately five hundred tons of sand and stone per day, and proceed with my deliveries as fast as grading is done, it being understood that the grading shall be done as fast as your equipment can do it. You are to order and have shipped such quantities of sand and stone as I am able to unload so that there may be no hold-up in my outfit. Should the shippers of the sand and stone fail to ship sufficient quantity, or less than .five hundred tons daily, you will immediately go into the open market, and purchase sufficient material to make up above-mentioned five hundred tons. * * * I am to furnish you bond for the faithful performance of the above work to the sum of ten thousand dollars."

In pursuance of said contract, Barber furnished a surety bond of the defendant, a corporate citizen of Maryland, in the penal sum of $10,000, which bond is sued upon in this case. It recites the contract from which the above extracts are made. and makes it a part of the bond. The condition of the bond is:

"That if the said principal [Elmer Barber] shall well and truly indemnify and save harmless the said obligee [John M. Kelley Contracting Company] from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal, to be performed, then this obligation shall be void; otherwise, to remain in full force and effect in law: Provided, however, that this bond is issued subject to the following conditions and provisions: Third, that in no event shall the surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action or other proceeding thereon that is instituted later than the 31st day of May, A. D. 1920."

While Barber's contract did not specify any date within which performance was to be made, it nevertheless is apparent that it contemplated performance in 90 working days. As appears from the pleadings, Barber—

"commenced the execution of said contract and partially furnished and delivered supplies therefor, but on or about March 20, 1920, the defendant defaulted under said contract and refused to proceed with said work and abandoned the unloading and delivering of road materials specified in said contract and thereafter performed no more work and refused to furnish, deliver or unload any other materials or supplies."

The pleadings further show that the plaintiff, within 30 days, notified the defendant surety company of Barber's default and requested it to complete the contract. This the surety company refused to do; thereupon the plaintiff itself completed Barber's contract at a loss exceeding the amount of the bond, and on January 27, 1921, brought suit to recover the same on the bond. The defendant answered, averring the suit was brought subsequent to May 31, 1920, the limitation stipulated in the bond, and moved to dismiss the complaint. This motion the court below granted in an opinion printed in the margin,[1]

1 "The plaintiff, a New Jersey corporation, brought an action in the New Jersey Supreme Court, which was subsequently removed into this court by appropriate proceedings, against the defendant, the United States Fidelity & Guaranty Company, a Maryland corporation, upon a written contract by which the defendant obligated itself to indemnify and save harmless the plaintiff from any pecuniary loss resulting from a breach of a contract made between the plaintiff company and one Elmer Barber, whereby Barber obligated himself to unload and deliver sand, stone, and cement on a certain road to be built between Da Costa, New Jersey, and a point 8,700 feet below Egg Harbor, New Jersey. The contract of indemnity provides in the third paragraph:

and to an order so dismissing, this writ of error was taken by the plaintiff.

[1] We find no error in the court's conclusion. We cannot hold, as a matter of law, that on its face the bond shows that the limitation of one year within which suit was to be brought was, as contended by the plaintiff, against public policy. On the contrary, it appears from the contract, which was, by reference, made part of the bond, that the

'That in no event shall the surety be  *  *  *  subject to any suit, action or other proceeding thereon that is instituted later than the 31st day of May, A. D. 1920.'

"The present action was commenced January 22, 1921, and the present motion is to strike the complaint as not brought within the period of limitation obtained in the contract. The bond of indemnity is dated May 31, 1919, and refers to a contract between the plaintiff company and Elmer Barber, the principal in the indemnity bond. This contract made May 29, 1919, is annexed to the pleadings.

"It is apparent that the defendant's obligation was to indemnify and save harmless the plaintiff from pecuniary loss resulting from a breach of the contract referred to in the bond. The bond provides that the defendant shall not be subject to an action instituted later than the 31st day of May, 1920. Obviously this clause of limitation must control, unless the limitation is so short as to render the contract of indemnity of no practical service. 20 Cyc. 1438.

"Reference to the principal's contract discloses that he was to deliver approximately 500 tons of sand and stone per day, and in all to deliver approximately 45,000 tons. Therefore in 90 days the principal could have performed his entire obligation under the contract. The principal's contract also imposed upon the plaintiff in this action the duty 'to order and have shipped such quantities of sand and stone as I [Barber] may be able to unload so that there may be no hold-up in my outfit. Should the shippers of the sand and stone fail to ship sufficient quantities or less than 500 tons daily, you [the plaintiff here] will immediately go into the open market and purchase sufficient material to make up the above-mentioned 500 tons.'

"It therefore seems that the provision limiting the right of action upon the indemnity contract to a period within one year is not so unreasonable as to make the indemnity contract of no practical service to the plaintiff. Referring to the contract between the plaintiff and Barber, it is apparent that Barber could have performed within 90 working days. It is further apparent that the plaintiff was obligated to exert its best efforts to make performance possible by buying material in the open market. How can it be said that the indemnity contract, with the express limitation of suit within one year after making the contract, is in any wise unreasonable or of a character to render it of no practical value? When the contract was made the plaintiff was obligated to use his best efforts to secure 500 tons of material a day, and the principal in the indemnity contract, Elmer Barber, was in turn obligated to deliver along the road, which the plaintiff was building, 500 tons of material a day until he had delivered approximately 45,000 tons of materials.

"Clearly, it was in the contemplation of the plaintiff and the principal in the indemnity contract that the contract would be performed within approximately the period of 90 days. Therefore an indemnity agreement, whereby the plaintiff was to be saved harmless by reason of any default by Barber, containing the limitation that any action for default must be brought within one year from the date of the indemnity contract, was reasonable and of practical service and value to the plaintiff. Had it not been, the plaintiff could have said to Barber we will require an indemnity contract which will run for a period of more than a year. See also United States v. Fidelity & Deposit Co. of Maryland, 224 Fed. 869, 140 C. C. A. 288, on the question of reasonable limitations.

"The motion will be sustained."

contract was to be performed in about 90 working days, and that in default of performance the plaintiff could, on each daily default, "go into the open market and purchase sufficient material to make up the above-mentioned 500 tons." In view of the provisions of the contract, it is quite apparent that the Kelley Company was in a position where it could insist on such timely performance by Barber, or, in case of his default itself go into the market and purchase the contract requirements, within such earlier part of the stipulated year as would allow several months leeway before the stipulated year of limitation expired.

[2] We are therefore of opinion that, under the circumstances, the limitation was not against public policy, or indeed was it, as contended, unreasonable, unjust, or oppressive under the circumstances. Nor do we agree with the further contention that the plaintiff, even in view of its omission to hold Barber to a timely fulfillment of his contract deliveries, did not have a right of action against the surety company when Barber defaulted and abandoned his contract on March 20, 1920. Certain it is that, on such refusal and abandonment by Barber to perform, there then accrued to the plaintiff a right of action against him. It is true the quantum of the damage was not then ascertained, but the fact of the damage and the legal wrong sustained by the plaintiff arose from the refusal of Barber to perform and his abandonment of the contract. The plaintiff had a contract right to call on him to perform and when he in March, 1920, abandoned the contract and refused to perform, the legal right to make him answer for that default, and therefore for the damages sustained from such default, then arose.

Barber, the principal in the bond, having thus defaulted, the Kelley Company recognized that fact and notified the surety company to fulfill the contract. It refused to do so, and therefore placed itself in the condition of forfeiture stipulated by its bond, because its principal, Barber, had failed to "well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract." etc.

Seeing, then, that Barber breached and abandoned the contract, and that a right of action against him inured to the plaintiff company, seeing that the surety company refused to perform for him, it is quite clear that a right of action also inured to the plaintiff against the surety company on its bond. The fact that all the sand and gravel were not then furnished by Barber, or that the cost of doing so for Barber had not then been ascertained, in no way affected the fact that the contract had been breached and abandoned by him, and a legal wrong done the plaintiff. The ascertainment of such damages, whether nominal or substantial, was a detail of proof. That could be done in several ways: By reletting the contract, by going into the open market and buying the contracted-for and defaulted road material at market prices, or by the Kelley Company going ahead, as it did, and completing the contract itself. In the absence of proof, the right of action might simply result in nominal damages; but it was the fact of contract breach and contract abandonment which created the right of action, and not the ascertainment of the quantum of damages, by proper proof.

Seeing then, that the one-year limitation was not in itself unlawful, and that before that limitation expired a right of action on the contract against Barber and on the bond against the surety company had inured to the plaintiff, the court below rightly held that such right of action on the bond was not asserted within the year stipulated therein, and therefore rightly dismissed the complaint.