178 N.J. Super. 399 (1981)
429 A.2d 388
WALTER E. ROEHRS, JR., PLAINTIFF-APPELLANT,
v.
JAMES J. LEES AND KATHLEEN LEES, HIS WIFE, DEFENDANTS-RESPONDENTS, AND BLACKLEDGE ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND JOHN T. DUNNE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 1981.
Decided March 31, 1981.
*400 Before Judges MICHELS, KOLE and ARD.
Charles W. Heuisler argued the cause for appellant (Archer, Greiner & Read, attorneys).
Paul W. Dare argued the cause for respondents (Gorelick, Groon, Dare & Hornstine, attorneys).
The opinion of the court was delivered by KOLE, J.A.D.
*401 On March 20, 1979 plaintiff filed a verified complaint in which he alleged that his neighbors, defendants Lees, were building a house on their land, adjacent to that of plaintiff, in violation of a covenant in the deed to defendants requiring a setback of 25 feet "from the 14th Street property line." In essence, plaintiff alleged that the common grantor of plaintiff and defendants, Loutom Enterprises, Inc. (Loutom), had placed the covenant in defendants' deed in order to protect plaintiff's view of the ocean and thus the covenant was enforceable by plaintiff.[1] Pending trial, on March 20, 1979 a temporary restraint, and on May 9, 1979 a preliminary injunction, were issued against defendants' performing any further work on their property within 25 feet of the front property line.
After a nonjury trial the judge ruled, in a letter opinion, that the covenant in defendants' deed could not be enforced by plaintiff and that a subsequent quitclaim deed from the common grantor Loutom to defendants purporting to extinguish or remove the covenant was valid. An accordant judgment was entered in May 1980. After plaintiff moved for amended findings of fact and conclusions of law or a new trial, the judge issued another letter opinion. In that opinion he stated that he had earlier erroneously given defendants the benefit of the statute of frauds despite their failure to plead this defense, but that nonetheless he had reached the correct ultimate conclusion. An order was entered denying plaintiff's motion and reaffirming the earlier judgment. This appeal followed.
It is necessary to discuss the proofs upon which the judge predicated his findings and determination adverse to plaintiff.
Plaintiff and defendants own contiguous properties on 14th Street in Avalon. Defendants' property is between that of *402 plaintiff and the ocean. Both plaintiff and defendants purchased their property from Loutom.
Plaintiff testified that before purchasing his land, which already had a house on it, he asked John Dunne, the president of Loutom, about the possibility that construction on the adjoining vacant lot might obstruct his view of the ocean. However, Dunne assured him that there would be a setback of 25 feet since Dunne owned the lot and was going to build for any purchaser thereof. Plaintiff's purchase contract was dated July 9, 1978.
Plaintiff closed title on his property on July 29, 1978. The purchase price was $150,000. According to plaintiff, on the morning of the closing he called Dunne and asked for a letter substantiating the agreement to impose a setback of 25 feet on development of the adjoining property. Dunne agreed. However, although at the closing he did not have a letter, he informed plaintiff not to "worry about it, it will be in the deed."
Dunne did not testify at trial, but his deposition was received into evidence and portions were read into the record. He stated that he had informed plaintiff that
... he would be protected, that he would have a view. I don't remember whether I told him I would put a restriction in the deed or not, but I told him he would be protected and he would have a view from the front deck and the living room, which is what he's got.
But an unsworn statement signed by Dunne and accepted in evidence stated that during the course of sale negotiations with plaintiff, reference was made to the imposition of a restriction on the adjacent property (Lot 16) providing that the house to be built on Lot 16 was to be set back 25 feet from the 14th Street property line.
On July 16, 1978 defendants entered into a contract to purchase Lot 16, the adjoining lot, from Loutom for $75,000. The contract did not provide for a setback requirement. Defendant James Lees testified that prior to the closing of title under his contract he never had any discussion with Dunne or with plaintiff about any setback requirement. The closing of title on *403 defendants' property took place on August 19, 1978. The deed provided that Loutom would be the contractor on the house to be built thereon and also provided:
UNDER AND SUBJECT to a certain restriction that the house is to be set back 25 feet from the 14th Street property line.
In his deposition Dunne said that he did not recall specifically telling defendants that there would be a restriction in their deed. He only recalled a general conversation with defendants that when the house was built "it's going to have to be built so the Roehrs [plaintiff] will have a view...." He did not remember whether this discussion took place at the closing or at some other time. However, he did state that James Lees was afforded an opportunity to look at the deed at the closing.
Lees testified that he was handed many papers at the closing but he did not recall seeing the deed. Dunne also stated that he had informed plaintiff that the restriction meant that the foundation of the house would be 25 feet back from the 14th Street property line, and Dunne's intention was that plaintiff would have "a view" of the ocean from "the front deck," since that was plaintiff's concern.
It is undisputed that the foundation of the house on defendants' property is set back 25 feet from the street. In fact, plaintiff testified that when he first saw construction on the lot he paced off the distance and concluded that there was compliance with the restriction. However, as construction continued plaintiff realized that the second floor of the house was being extended out over the first floor, closer to 14th Street into the "restricted area." Plaintiff estimated the length of the extension as eight feet. The pictures in evidence show that the extension substantially obstructs the view of the ocean from plaintiff's porch.
Plaintiff, who lives in Pennsylvania and only visited this shore home from time to time, stated that in the fall of 1978 he first noticed construction on defendants' lot but did not notice the second-floor extension until some time in January 1979. When *404 plaintiff saw this extension he called his Pennsylvania attorney, Shuman, who wrote to defendants on February 16, 1979 advising them to cease violating the deed restriction. Defendant James Lees responded with a letter to the attorney enclosing a copy of a quitclaim deed dated October 18, 1978 from Loutom to defendants releasing defendants from the setback restriction in their deed. Although the letter stated that the deed was recorded on December 6, 1978, the copy of the deed attached to the letter is unrecorded. There was also in evidence a copy of the quitclaim deed which was recorded on December 6, 1978. Both versions of the deed expressly extinguish the requirement of a setback of 25 feet in the deed of the property to defendants. The recorded deed also extinguishes the requirement that Loutom be the contractor for the house to be built on the property. James Lees testified that he did not know why there were two versions of the quitclaim deed. He said that he received the deed in the mail, called Dunne to ask what it was and later sent it to Shuman.
We note that in the letter from Shuman to the Lees of February 16, 1979 court action was threatened if further construction in violation of the deed restriction did not cease immediately; and in Shuman's March 7, 1979 letter to the Lees, in which they were informed that the restriction could not be unilaterally extinguished by the quitclaim deed, the attorney pointed out that the matter "may be resolved at this time with relatively minor alterations to the existing structure," but if court action were necessary, the entire second story would have to be "set back" in order to comply with the restriction and that it was in everyone's best interest to move forward promptly to avoid litigation. Thus, as early as February 1979 defendants were on notice that they were continuing to build at their own risk.
Essentially, the judge ruled in both opinions that plaintiff was not entitled to enforce the covenant because he failed to prove that (1) the covenant was intended by the common grantor to benefit him and (2) defendants purchased their property with *405 notice that the covenant was intended to benefit him. In so ruling he found that plaintiff had failed to prove that defendants knew that there was a deed restriction at the closing of title to their land or at any time before construction of the offending structure began, or that such restriction was intended to benefit plaintiff.
Although the scope of our review in a nonjury case generally is limited, Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App.Div. 1978), aff'd o.b. 78 N.J. 320 (1978), from our consideration of the proofs we have concluded that the judge's findings and ultimate conclusion are clearly mistaken and so plainly unwarranted that the interests of justice demand our intervention and correction. Hence we have appraised the record as if we were deciding the matter at inception and have made our own findings and conclusions. The record convinces us that there is a manifest lack of inherently credible evidence to support the significant findings the judge made, that he overlooked and underevaluated crucial evidence and that the result he reached is manifestly unjust.
We need not defer to the judge's assessment of the deposition testimony or the "affidavit" of Dunne, since obviously it did not involve the matter of witness credibility. Additionally, the testimony of defendant Lees was so contradictory and inherently incredible in many essential areas that we have concluded that it cannot support the findings made in his favor and against plaintiff.
The judge properly ruled that plaintiff had the burden of demonstrating that the covenant was intended for his benefit and that defendants were aware of its existence and of its purpose to benefit plaintiff. Once that burden had been met plaintiff was entitled to enforce the covenant for his benefit, at least while he owned the land here involved  Lot 14, block 14.01 *406 on the official tax map of the Borough of Avalon.[2]See Houston Petroleum Co. v. Automotive, etc., Ass'n., Inc., 15 N.J. Super. 215, 224-225 (App.Div. 1951), rev'd on other gds., 9 N.J. 122 (1952); Wagenheim v. Willcox, 105 N.J. Super. 263 (Ch.Div. 1969); Mango v. Brodsko, 32 N.J. Super. 616, 619 (Ch.Div. 1954); Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 446-447 (Ch. 1948), aff'd o.b. 1 N.J. 508 (1948); Annotation, "Who may enforce restrictive covenant or agreement as to use of real property," 51 A.L.R.3d 556, 561-566, 572 (1973); 7 Thompson, Real Property, § 3172 at 190 (1962); Restatement, Property, § 528 at 3185-3186, § 541 at 3246-3249 (1944). See, also, N.J.S.A. 2A:15-2; Drewen v. Bank of Manhattan Co. of City of N.Y., 31 N.J. 110, 116-117 (1959).
We are unable to agree with the judge's conclusions concerning plaintiff's failure to satisfy his burden of proof. We are not aware of anything in the record which could support a determination other than that defendants knew that the covenant was intended to benefit plaintiff by fulfilling Dunne's promise to plaintiff to protect his ocean view. There is simply no suggestion that it could have been intended to accomplish any other purpose.
The judge placed entirely too much weight on and significance to the deposition and "affidavit" of Dunne and the testimony of defendant Lees in making his findings that (1) the restriction was ambiguous since it could have been designed to benefit Loutom in connection with its arrangement to build the Lees' house or could have been intended to benefit other property owners on the street, including Roehrs; (2) the attempted removal of the restriction by Loutom by the quitclaim deed strongly suggested that the covenant was intended to benefit *407 only the original parties to the conveyance rather than plaintiff; (3) "the parties to the Lees deed intended the covenant to be personal" rather than to run with the land; (4) "at most," Dunne told Lees that he, Dunne (not Lees) had an obligation to protect plaintiff's view; (5) Dunne never told Lees that the deed restriction was intended to benefit plaintiff; (6) Lees never had notice that the deed restriction was intended to benefit plaintiff; (7) Dunne's only obligation was to give plaintiff "a view" or "some view," which he had; (8) any such view was bound to be restricted by building the house on Lees' property, and (9) at best, plaintiff was no more than an incidental third-party beneficiary of the covenant in the deed and thus could not enforce that promise.
We do not find Dunne's evidence to be at all credible. It is not only contradictory and evasive in nature but totally self-serving. Additionally, the fact that there were two versions of the quitclaim deed, the vagueness of defendant Lees' testimony with respect to his receipt of one of them from Dunne and the inconsistencies in his testimony convince us of the trustworthiness of the proof presented by plaintiff through his attorney Shuman. Shuman testified that after Lees received his February 1979 letter, Lees, in a telephone conversation, informed him that when Dunne had reviewed Lees' plans, he advised Lees that it would violate a restriction he had placed in Lees' deed at plaintiff's "demand;" that when Lees insisted on building according to the plans, Dunne "said he could take care of the problem by giving him a new deed that would eliminate the restriction," and that Lees had received that deed which had been recorded. Moreover, in our view, plaintiff's testimony is inherently credible and is amply supported by the proofs in the case, including portions of Dunne's deposition and "affidavit" evidence.
Thus, Dunne admitted in effect that he promised plaintiff to insert the 25-foot setback covenant in the deed to the adjacent lot, nor did he deny that the covenant was only for plaintiff's benefit. Instead, at best, he seemed to be asserting that his *408 intent in incorporating the covenant in the deed was to fulfill his promise to leave plaintiff "some view" and not to entitle him to the full benefit of the 25-foot setback required thereby.
Further, there is nothing in the record to indicate that at the time of the sale from Loutom to defendants, Loutom or any one but plaintiff would have benefited in any way from the covenant; and even if other property owners, including plaintiff, would have benefited, there is no requirement that a third-party beneficiary must be the sole beneficiary in order to enforce a covenant in his favor. The following, among others, support the conclusion that Lees had notice of the covenant and its intent to benefit plaintiff: Dunne's testimony that he had informed defendants that plaintiff's view would have to be protected and that James Lees had an opportunity to see the deed at the closing; Lees' testimony at trial that he did not believe that he saw the deed at the closing, as opposed to his deposition statement that he did not recall whether he saw it; and the testimony of plaintiff's Pennsylvania attorney Shuman, which we have already discussed.
We do not believe that a fair appraisal of all of the evidence justifies the inference that there was no proof that Lees was ever advised by anyone that the restriction in his deed was intended to benefit plaintiff. The fact that the deed restriction was unilaterally later released does not in any wise support an inference that Dunne did not intend to benefit plaintiff by the restriction or that Lees did not know, before construction started, that the purpose to benefit plaintiff was manifested by the covenant contained in their deed. Indeed, the contrary inference is irresistible from the credible evidence in the record  that Lees knew that the restrictive covenant was intended to benefit plaintiff and was aware of this fact before he began building his house. Thus, plaintiff has established his right to enforce the covenant.
The judge also stated that since Loutom did not own plaintiff's lot when the covenant was exacted, the usual conclusion *409 that retained land is intended to benefit from a restriction such as this was not available and that, as a prior grantee of Loutom, under usual rules plaintiff could not enforce a covenant contained in the deed of a subsequent grantee. He also indicated that since the covenant was not intended to run with the land, it was an unenforceable personal agreement. Under the circumstances of this case none of these principles bars plaintiff's right to enforce the covenant as an intended third-party beneficiary thereof against defendants. See, Annotation, supra, 51 A.L.R.3d at 561-567; Mango v. Brodsko, supra, 32 N.J. Super. at 619. See, also, n. 2 supra. When Dunne sold to plaintiff he bound himself to impose the restriction at such time as he transferred the property which he retained  that which he later conveyed to defendants  and the covenant in the deed to defendants was intended to discharge this obligation to plaintiff.
Despite the fact that Dunne stated that by his promise he merely intended plaintiff to have some view of the ocean and that his present view complied therewith, plaintiff is entitled to enforce the covenant to the full extent of its 25-foot setback. This action is not on the underlying promise, but is on the covenant. A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee. 17 Am.Jur.2d, Contracts, § 315 at 743; 2 Williston, Contracts (3 ed. 1959), § 364A at 873. See, also, Wagenheim v. Willcox, supra, 105 N.J. Super. at 266, et seq. However, as indicated below, the precise nature of the remedy to be afforded plaintiff in connection with the enforcement of the covenant is another matter.
Thus, we find and conclude that plaintiff has sustained the burden of proving that the restrictive covenant in defendants' deed was intended for his benefit; that both Dunne and defendants were aware of the fact and of the existence of the covenant before construction of defendants' house commenced and, indeed, at the time of the closing of title on defendants' property; that the intent of the covenant was to protect plaintiff's *410 view of the ocean by prohibiting any construction within the setback of 25 feet from the 14th Street property line; that the covenant in defendants' deed is enforceable by plaintiff, and that the purported unilateral release of the restriction by the quitclaim deed was ineffective to deprive plaintiff of his rights under the covenant. Hence, plaintiff is entitled to enforce the covenant against defendants and the judgment below must be reversed.
But that does not end the matter. The granting of the mandatory injunctive relief requested by plaintiff involves the exercise of sound discretion by the trial judge in the light of the circumstances of the case. See Gilpin v. Jacob Ellis Realties, Inc., 47 N.J. Super. 26 (App.Div. 1957); Wagenheim v. Willcox, supra, 105 N.J. Super. at 269. The exercise of that discretion may involve a consideration of such matters as whether the violation of the covenant was wanton in character and either of the parties acted unreasonably. Gilpin, supra, 47 N.J. Super. at 29, 31. It also may involve application of the doctrine of relative hardship, under which such an injunction may be denied where the benefit to plaintiff, if it were issued, would be "grossly less than the expense which would thereby be put to the defendant in carrying out the injunction." Id. at 31. In balancing the equities in the present case on remand the trial judge may wish to receive additional evidence, including that relevant to the cost which an injunction requiring full compliance with the covenant would impose on defendants. Gilpin emphasized that the doctrine of relative hardship is particularly applicable to a case where the plaintiff has an adequate alternative remedy of damages and where the court is not dealing with "personal interests" involving the pleasure of a property owner in the enjoyment of his land. Id. at 35. We observe that the present case involves the enjoyment by plaintiff of his land by reason of an ocean view and that he does not seek and might not readily be compensated by damages. See Wagenheim v. Willcox, supra. We also note that as early as February 1979 defendants were informed by plaintiff's attorney of the violation *411 and at that time the expense involved in removing the offending structure might well have been substantially minimized.
Thus, the matter must be remanded to the trial judge for a hearing on and a determination of the appropriate remedy to be afforded plaintiff in order to protect his rights under the covenant.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Defendant Blackledge Associates, Inc. apparently was terminated as a party to this action. A third-party complaint by defendants against Loutom was never answered and a default was entered thereon.
[2] Since the original parties to the property transactions here involved are those who are endeavoring to enforce and to resist the enforcement of the covenant, we need not decide whether the covenant would, or was intended to, benefit or burden the successors in interest of plaintiff or defendants, respectively.