231 N.J. Super. 16 (1989)
554 A.2d 1350
RIBEIRA & LOURENCO CONCRETE CONSTRUCTION, INC., PLAINTIFF-APPELLANT,
v.
JACKSON HEALTH CARE ASSOCIATES; JOHN J. MICHAELS DEVELOPERS, INC.; MICHAEL CASTORO; GREEN CAST ENTERPRISES, INC.; CONDOR COMPANY, INC., AND HOWARD LOWY, DEFENDANTS, AND INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1988.
Decided February 16, 1989.
*18 Before Judges MICHELS, LONG and MUIR, Jr.
Ronald Horowitz argued the cause for appellant (Rubin, Rubin & Malgran, attorneys; Ronald Horowitz, of counsel and on the brief).
*19 Peter V. Koenig argued the cause for respondent (Napodano & Raffo, attorneys; Peter V. Koenig, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Ribeira & Lourenco Concrete Construction, Inc., appeals from a summary judgment of the Law Division entered in favor of defendant Indemnity Insurance Company of North America (North America) in this action to recover under a labor and material payment bond guaranteeing the claims of subcontractors and suppliers employed in the construction of the Jackson Health Care Center in Jackson, New Jersey. The pivotal issue posed by this appeal is whether plaintiff's action was barred by the bond provision that limited the time in which to bring suit on the bond to one year after the principal had ceased work on the project.
The facts essential to the resolution of this issue are uncontroverted. On July 12, 1984, defendant Jackson Health Care Associates (Jackson) and defendant John J. Michaels Developers, Inc. (Michaels), entered into a contract pursuant to which Michaels, as developer and general contractor, would build the Jackson Health Care Center. A rider to the prime contract required that Michaels furnish a performance bond naming Jackson as obligee. On October 9, 1984, Michaels subcontracted the construction of the project to defendant Green Cast Enterprises, Inc. (Green Cast). The subcontract incorporated both the prime contract and the rider to the prime contract. In conjunction with the subcontract, North America, as surety, executed a labor and material payment bond that guaranteed claims for labor and material used in the performance of the subcontract between Michaels and Green Cast. The bond named Green Cast as principal and Jackson as obligee.
Green Cast subcontracted with defendant Condor Company, Inc. (Condor), and its agent, defendant Howard Lowy (Lowy), *20 as well as various other companies. In turn, Condor and Lowy subcontracted with plaintiff for masonry work. Green Cast guaranteed payment to plaintiff under the subcontract.
Plaintiff commenced its work under the subcontract. By early 1985 plaintiff was experiencing difficulty obtaining payment from either Condor or Green Cast. After repeated requests for payment of sums totalling $77,268.30, plaintiff had received only one payment, totalling $25,000. On January 5, 1985, with approximately 96% of its work completed, plaintiff left the work site.
Michaels scheduled a meeting with all the subcontractors on the project regarding the status of the project. At the meeting on February 13, 1985, Michaels, through its president, defendant Michael Castoro (Castoro), informed the subcontractors that it had "terminated the services of [Green Cast] effective immediately." Green Cast thereupon ceased work and left the project. Michaels negotiated with plaintiff and the other subcontractors that had worked for Green Cast. Plaintiff agreed to return to the job, but did not sign a contract with Michaels. Michaels, however, paid plaintiff $25,000 that had originally been marked for payment to Lowy, leaving plaintiff with an outstanding balance of $27,268.30.
Plaintiff returned to the job and in March 1985 completed its work. Plaintiff thereupon submitted to Michaels a final bill in the sum of $30,768.30, which included $3500 in costs incurred after plaintiff had returned to the project. Michaels referred plaintiff to either Green Cast, Lowy or Condor in order to obtain payment on the final bill. The bill was not paid. The project was completed in early 1986, after Michaels had been replaced as general contractor.
On August 11, 1985, plaintiff instituted this action against Jackson, Michaels, Castoro, Green Cast, Condor and Lowy to recover the unpaid balance due it for services rendered and material furnished in connection with the project. On September 9, 1986, Jackson filed an answer and joined defendant as a *21 third-party defendant. Shortly thereafter, on October 20, 1986, plaintiff amended its complaint to include a direct claim against defendant as surety for Green Cast on the bond.
Following completion of discovery, North America moved for summary judgment on the ground that the action against it was barred by the bond provision that limited the time in which to bring suit on the bond to one year after the principal had ceased work on the project. Judge Mannion in the Law Division found the time limitation provision of the bond to be valid and enforceable. Since Green Cast, the principal, ceased work on the project on February 13, 1985, and plaintiff did not commence suit against North America, the surety, until October 20, 1986, more than a year later, the trial court held that plaintiff was barred from bringing suit. Summary judgment was entered in favor of North America, and plaintiff's motion for reconsideration was denied. This appeal followed.
Plaintiff contends that the summary judgment should be reversed and the matter remanded for a plenary trial because the trial court erred in finding the one-year time limitation in which to institute suit on the bond to be enforceable. We disagree. Plaintiff's standing to sue North America arises solely by virtue of its status as a third-party beneficiary under the bond issued by Green Cast, as principal, and North America, as surety, to Jackson, as obligee. See 17 Am.Jur.2d, Contractors' Bonds, § 16 at 201-202. It is well-settled that "[a] third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee." Roehrs v. Lees, 178 N.J. Super. 399, 409 (App. Div. 1981). See also 17 Am.Jur.2d, Contracts, § 315 at 743; 2 Williston, Contracts (3 ed. 1959), § 364A at 873; 4 Corbin On Contracts, § 820 at 278. Moreover, a surety is chargeable only according to the strict terms of its undertaking, and its obligation cannot be extended either by implication or by construction beyond the confines of its contract. Monmouth Lumber *22 Co. v. Indemnity Insurance Co. of North America, 21 N.J. 439, 452 (1956).
Here, the pertinent provision of the bond reads as follows:
3. No suit or action shall be commenced hereunder by any claimant: ...
(b) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. [Emphasis added].
It is undisputed that the principal, Green Cast, ceased work on the project on or about February 13, 1985. Plaintiff's action against North America on the bond was not instituted until October 20, 1986, more than one year and eight months later. Thus, the one-year limitation period contained in the bond barred plaintiff's claim.
Contrary to plaintiff's argument, a one-year limitation period in a bond, such as the one under review, is valid, reasonable and enforceable. See V. Petrillo & Son, Inc. v. American Const. Co., 148 N.J. Super. 1 (App.Div. 1977), certif. den., 75 N.J. 4 (1977); John M. Kelley Contracting Co. v. U.S. Fidelity & Guaranty Co., 278 F. 345 (3d Cir.1922). Although there does not appear to be any reported decision precisely on point in New Jersey, there is persuasive authority elsewhere that the one-year limitation period bars any action filed after the one-year period even though the claimant, such as plaintiff here, had no knowledge of such bond provision. See Sanders v. American Casualty Co. of Reading, Pa., 269 Cal. App.2d 306, 74 Cal. Rptr. 634 (1969); Rumsey Electric Co. v. University of Delaware, 358 A.2d 712 (Del. 1976).
Additionally, we emphasize that the one-year limitation period contained in the bond is not against public policy or prohibited by New Jersey law simply because N.J.S.A. 2A:14-1 provides for a six-year statute of limitations upon a contractual claim. As stated previously, our courts have held such provisions to be valid and enforceable. See V. Petrillo & Son, Inc. *23 v. American Const. Co., supra, 148 N.J. Super. 1 (App.Div. 1977); A.J. Tenwood Assoc. v. Orange Sr. Citizens Housing Co., 200 N.J. Super. 515, 523-525 (App.Div. 1985), certif. den., 101 N.J. 325 (1985). See also John M. Kelley Contracting Co. v. U.S. Fidelity & Guaranty Co., supra, 278 F. 345 (3d Cir.1922). In an analogous context, our former Court of Errors and Appeals in Weinroth v. New Jersey Manufacturers Association Fire Ins. Co., 117 N.J.L. 436 (E. & A. 1937), discussed whether a shorter period of limitation provided in an insurance policy was prohibited by law. The Court noted:
In determining whether any provision of an insurance contract conflicts with the general laws of this state, the test should be whether the terms provide for, or permit, that which the statute forbids and prohibits. We are unable to observe any conflict, as the statute provides, in effect, that no suit can be instituted after six years, but does not make it unlawful for parties to agree by contract that the limitation shall be for a lesser period. The courts in this state have held on many occasions that a clause in an insurance policy limiting the time within which suit must be instituted is enforceable. [117 N.J.L. at 438].
More recently, in A.J. Tenwood Assoc. v. Orange Sr. Citizens Housing Co., supra, we rejected a challenge to a provision in a construction contract that required that any actions against the owner be commenced within one year after substantial completion of the contract. We stated:
[T]he one-year limitation period contained in the construction contract executed by the parties ... was neither unfair nor unreasonable. Although the statutory limitation in this State for actions in contract is six years, N.J.S.A. 2A:14-1, such a limitation may be waived by express agreement of the parties. See Simpson v. Hudson County National Bank, 141 N.J. Eq. 353, 357 (E. & A. 1948). It is fundamental that in the absence of a statute barring such agreements, a contractual stipulation limiting the time for bringing an action upon a contract to a period less than that prescribed by the foregoing statute is valid if the stipulated period is reasonable and does not violate public policy. [200 N.J. Super. at 523-524].
See also Staehle v. American Employers' Ins. Co., 103 N.J. Super. 152, 154 (App.Div. 1968); Process & Storage Vessels, Inc. v. Tank Service, Inc., 541 F. Supp. 725, 728-729 (D.Del. 1982), aff'd, 760 F.2d 260 (3rd Cir.1985).
Similarly, such contractual limitations have been upheld in other jurisdictions. In Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co., 89 Mich. App. 219, 280 N.W.2d *24 491 (1979), aff'd, 410 Mich. 118, 301 N.W.2d 275 (1981), the surety issued a payment bond with language identical to that in the bond in the present case. The plaintiff argued that the limitation provision was ambiguous because it was unclear whether the six-year statute of limitations for contract actions applied as opposed to the one-year period under the bond. The Michigan Court of Appeals held that the language of the bond was clear and unambiguous, and that the one-year limitation was not prohibited by the statute that provided a six-year period in which to institute contract actions. Rather, the contractual limitation was held "valid, enforceable, and in accord with public policy." 280 N.W.2d at 493. In rejecting the plaintiff's argument, the court stated:
[P]laintiff insists that a distinction must be made between the immediate parties to a contract, who should be bound by any limiting contractual provisions to which they agreed, and third parties seeking recovery under the surety contract, against whom it would be unreasonable to enforce the contractual limitation. We find the distinction unpersuasive in the context of this private construction bond. There is nothing unreasonable about requiring a subcontractor to investigate its right to payment within one year after the general contractor has abandoned the project. [280 N.W.2d at 493-494 (footnote omitted)].
See also Rumsey Electric Co. v. University of Delaware, supra, 358 A.2d 712 (Del. 1976); Sanders v. American Casualty Co., supra, 269 Cal. App.2d 306, 74 Cal. Rptr. 634 (1969); Con-Plex, Div. of U.S. Indus., Inc. v. Vicon, Inc., 448 So.2d 191 (La. App. 1984). But cf. Joseph F. Hughes & Co. v. George H. Robinson Corp., 211 Va. 4, 175 S.E.2d 413 (1970).
We are also satisfied that the one-year period within which suit had to be commenced against North America ran from the date that Green Cast ceased work on the project, not from the date that the last subcontractor retained by Green Cast completed its work under the contract. The rights of a third-party beneficiary, such as plaintiff, depend upon and are measured by the terms of the bond, the contractual undertaking between the promisor and the promisee. Roehrs v. Lees, supra, 178 N.J. Super. at 409; Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co., supra, 301 N.W.2d at *25 281-282; Rumsey Electric Co. v. University of Delaware, supra, 358 A.2d at 714. Moreover, it has long been settled in this State that a surety is chargeable only according to the strict terms of its undertaking, and its obligation cannot and should not be extended either by implication or construction beyond the confines of the contract. Monmouth Lumber Co. v. Indemnity Ins. Co. of No. Amer., 21 N.J. at 452.
Here, the bond plainly provided that no action could be commenced against North America after the expiration of one year following the date on which the principal ceased work on the project. The principal, Green Cast, was terminated from the project on February 13, 1985, more than one year and eight months prior to the time when plaintiff filed its amended complaint to include a direct claim against North America. There was no ambiguity in the language of the time limitation provision and, therefore, the trial court properly concluded as a matter of law that plaintiff's action against North America was barred.
We also hold that North America was not estopped from raising as a defense the one-year limitation provision of the bond solely because plaintiff was not given notice of the existence of the bond. There was no misrepresentation or concealment by North America regarding the bond. Furthermore, the record reveals that North America took no action with the intention or expectation that it would be acted upon by plaintiff and that plaintiff did not change its position to its detriment based upon any action taken by North America. See Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339-341 (1979); Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 (1966), cert. den., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966); Torcon, Inc. v. Alexian Brothers Hospital, 205 N.J. Super. 428, 437 (Ch.Div. 1985), aff'd, 209 N.J. Super. 239 (App.Div. 1986), certif. den., 104 N.J. 440 (1986); O'Neill v. Washington Tp., 193 N.J. Super. 481, 487 (App.Div. 1984). See also Knight v. Brown Transport Corp., 806 F.2d *26 479, 487 (3d Cir.1986). Thus, there is no basis or reason to apply the doctrine of equitable estoppel to preclude North America from pleading the time limitation provision of the bond.
Finally, the claim against North America contained in the amended complaint filed by plaintiff on October 20, 1986, did not relate back to the date of filing of the original complaint to bring this action within the period of limitation provided by the bond. R. 4:9-3, which defines when an amendment may relate back, expressly provides:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. [Emphasis added].
Here, pursuant to the terms of the bond, the one-year period for commencing an action against North America had expired before plaintiff filed the amended complaint. An impleader after the time in which to sue has expired on a plaintiff's claim against a third party will not entitle the plaintiff to amend his complaint to include the third party unless all three prerequisites enunciated in R. 4:9-3 are satisfied, specifically that:
(1) the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence alleged or sought to be alleged in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; and (3) the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her. [Viviano v. CBS, Inc., 101 N.J. 538, 553 (1986)].
Here, there is nothing in the record to suggest that plaintiff's failure to join North America was the result of a mistake concerning the surety's identity as a proper party to the action. *27 Rather, plaintiff failed to join North America because plaintiff was unaware of the existence of a surety bond from which it could obtain payment. See Townsend v. Great Adventure, 178 N.J. Super. 508, 519-520 (App.Div. 1981). Cf. Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 103 (1st Cir.1979); Sitarz v. Bucher, 652 F. Supp. 95, 101 (D.N.M. 1986); Jenkins v. Carruth, 583 F. Supp. 613, 616 (E.D.Tenn. 1982), aff'd, 734 F.2d 14 (6th Cir.1984).
Consequently, we find that plaintiff failed to meet the requirements of R. 4:9-3 and, therefore, its amended claim did not relate back to the date of filing of the original action. See Pressler, Current N.J. Court Rules, Comment 1, R. 4:9-3 (1989). See also McGlone v. Corbi, 59 N.J. 86, 94-97 (1971); Townsend v. Great Adventure, supra, 178 N.J. Super. at 519-520; United States v. Western Cas. & Surety Co., 359 F.2d 521, 523 (6th Cir.1966). But see Sam Finley, Inc. v. Interstate Fire Ins. Co., 135 Ga. App. 14, 217 S.E.2d 358 (1975).
Accordingly, the summary judgment under review is affirmed.