**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0081-17T3

LESSNER ELECTRIC COMPANY,

    Plaintiff-Appellant,

v.

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND, ZURICH AMERICAN
INSURANCE CO., and APS
CONTRACTING, INC.,

    Defendants-Respondents.

_____

        Argued July 31, 2018 — Decided August 8, 2018

        Before Judges Sabatino and Mawla.

        On appeal from Superior Court of New Jersey,
        Law Division, Union County, Docket No. L-1353-
        17.

        Glenn C. Slavin argued the cause for appellant
        (Slavin & Morse, LLC, attorneys; Glenn C.
        Slavin, on the brief).

        Eric J. Levine argued the cause for
        respondents Fidelity and Deposit Company of
        Maryland and Zurich American Insurance Company
        (Baron Samson, LLP, attorneys; Eric J. Levine,
        on the brief).

Daniel Connolly Carmalt argued the cause for respondent APS Contracting, Inc. (Carmalt Law, LLC, attorneys; Daniel Connolly Carmalt, on the brief).

PER CURIAM

Plaintiff Lessner Electric Company (Lessner) appeals from August 22, 2017 and September 20, 2017 orders dismissing its complaint alleging breach of contract, delay damages, and unjust enrichment on grounds of a failure to state a claim. We affirm.

In July 2013, Lessner entered into a subcontract with defendant APS Contracting, Inc. (APS) to perform electrical work on the construction of the Union County Family Courthouse. In pertinent part, the contract between Lessner and APS stipulated as follows:

> To the fullest extent permitted by law, [Lessner] <u>waives its right to any claim for damage for delay</u> from [APS] . . . . [Lessner] expressly confirms its understanding that this is a complex project with multiple prime contractors and/or numerous other subcontractors, which conditions may result in, by way of example only and not by the way of limitation, coordination and interference issues, out of sequence work, recurring schedule revisions, compression and/or acceleration of the [w]ork, stoppage of the [w]ork, and/or other unspecified delays to the [p]roject and for which [Lessner] may not be compensated. [Lessner] expressly undertakes and assumes the risks of the above and disclaims any liability for same on the part of [APS].
>
> [(Emphasis added).]

2

Defendants Fidelity and Deposit Company of Maryland, and its parent company Zurich American Insurance Co. (collectively, the surety) insured the performance of APS through a warranty bond. In April 2015, APS was removed from the project, and the surety assumed APS's role for the remainder of the project.

In August 2015, the surety entered into an Assignment and Ratification Agreement (ratification agreement) with Lessner to reaffirm its subcontract, bring Lessner current for certain payments and costs Lessner believed were due from APS, and have Lessner complete the remainder of its work.

The ratification agreement expressly stipulated in paragraph 2: "Except as otherwise modified by this Agreement, the terms of the Subcontract remain in full force and effect." The ratification agreement further stated Lessner "hereby: (i) ratifies and affirms its obligations under the Subcontract . . . [and] (iv) agrees . . . [it] shall complete the Subcontract and the Subcontract Work . . . for [the] Surety, as a subcontractor for [the] Surety, in accordance with the terms of the Subcontract and Contract [with APS] . . . ." The ratification agreement also set forth the amount Lessner claimed it required from the surety in order to return and complete its work. This figure was comprised of the original amount agreed upon between Lessner and APS with an addition for a change order, less sums already paid to Lessner.

A-0081-17T3

The surety and Lessner agreed on no other conditions on Lessner's return to the project, other than to contract for the payment of the sums due under the original contract. However, the ratification agreement did identify damages Lessner claimed it had suffered as a result of the delay of the project. Specifically, paragraph 4 of the ratification agreement released APS and the surety,

> from any and all claims, of any type or kind, known or unknown, asserted or unasserted, which in any way arise from, relate to, or concert the Subcontract, the Contract, the Project, the Bond, and/or the [Lessner's] performance under the Subcontract, which claims have accrued or arise out of or relate to events occurring prior to the date of this Agreement, excluding only: . . . (ii) such claims as may be identified . . . in Rider A, which is attached hereto and made a part hereof.

Rider A was entitled "PENDING REQUESTS FOR CHANGE ORDERS AND RESERVED CLAIMS," and allegedly included Lessner's non-waiver of a claim for delay damages although the rider did not describe them specifically as such.[1]

In September 2016, Lessner asserted a claim against the surety seeking "additional compensation due to the delay damages"

---

[1] The bottom of Rider A obliquely references a May 20, 2015 "Scheduling Concerns/Delays" letter. However, the letter was not supplied to the motion judge, and is not part of the record before us.

totaling $1.82 million allegedly resulting in a twenty-four month delay caused by APS's replacement on the project. The surety noted Lessner's sole remedy for delay under the contract was to seek an extension of time to complete its work. The surety also noted there had been "no meeting of the minds" under the ratification agreement to compensate Lessner for delay damages.

Lessner filed a complaint in the Law Division for breach of contract against defendants seeking payment of the delay damages. The complaint asserted three counts against the surety, alleging a breach of the bonding agreement, the contract with APS, and unjust enrichment. The surety and APS filed motions to dismiss for failure to state a claim. Defendants argued their motions should be granted because of the express waiver of delay damages clause under the contract with APS, and that delay damages were not recoverable under the express terms of the bond and the Bond Act, N.J.S.A. 2A:44-143 to -147.

The motion judge granted the surety's motion to dismiss. The judge found Lessner knew of its delay damages claim, yet entered into the ratification agreement, which did not provide for payment of the alleged damages. The judge also concluded the express waiver of delay damages under the contract with APS was binding, and therefore likewise dismissed the claims against APS. This appeal followed.

We begin by reciting our standard of review. Appellate review of a trial court's ruling on a motion to dismiss is de novo. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (citing Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002)). "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Ibid. (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "This standard requires that 'the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement.'" Ibid. (quoting Seidenberg, 348 N.J. Super. at 250); see also Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

On appeal, Lessner asserts the motion judge prematurely dismissed its complaint and applied the wrong legal standard for Rule 4:6-2(e) motions by requiring Lessner to prove the allegations in the complaint, rather than afford it every favorable inference. Lessner argues APS acted in bad faith and contrary to the intent of the contract by delaying the project by two years. Lessner asserts the motion judge failed to search the contract to understand its intent. Additionally, Lessner argues the "no delay damages" clause allowed for a modification, and the surety

allegedly ratified the modification provision when it entered into the ratification agreement, which contained Rider A. We address these arguments in turn.

"A contract is an agreement resulting in obligation enforceable at law. . . . To be enforceable as a contractual undertaking, an agreement must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958) (citing Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956)). "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." Karl's Sales & Serv. v. Gimbel Bros., 249 N.J. Super. 487, 492 (App. Div. 1991).

"Generally, the terms of an agreement are to be given their plain and ordinary meaning." M.J. Paquet v. N.J. DOT, 171 N.J. 378, 396 (2002). "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales, 249 N.J. Super. at 493 (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)); see also Cty. of Morris v. Fauver, 153 N.J. 80, 103 (1998).

Courts may not "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for

the benefit of one party and the detriment of the other." Ibid. (citing James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950)). "A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc. 365 N.J. Super. 120, 125 (App. Div. 2004).

Here, as we noted, the contract between Lessner and APS contained an express waiver of delay damages. Lessner concedes as much, and also does not dispute the ratification agreement generally reaffirmed the terms and conditions of the contract with APS.

The motion judge concluded:

> [The contract] says no damages for delay. And when [Lessner] . . . ratified, [it] knew what the delay was at that point. At that point in time, now [the] surety is in. It's not APS you're suing or anything like that, it's the surety that comes in and says . . . do you want to finish . . . this job? Here's your contract, list everything that's outstanding, list your retainage . . . and then we'll have a Rider A which has things that you're going to ask them for that are beyond the price of the contract, and they're going to say yes to some things and no to . . . some other things. But when a contract provision is clear, and we all know what delay damages are, when that's clear then I think [defendants have] a right to have that interpreted with the plain meaning. No damages for delay.

Our de novo review leads us to the same conclusion as the motion judge. Lessner's complaint could only proceed if defendants were responsible for payment of delay damages. The plain language of the contract provides for a clear waiver of delay damages. Therefore, the motion judge properly dismissed Lessner's complaint for failure to state a claim.

Moreover, the ratification agreement did not contain a mutual agreement to compensate Lessner for delay damages, and thus did not modify or afford greater rights to Lessner than those set forth in its contract with APS. Indeed, as we noted, at most Rider A merely reflected Lessner's position that it was not waiving its right to <u>assert</u> a claim for delay damages. However, the complaint and the record do not support Lessner's argument that the surety agreed to compensate Lessner for any alleged delay damages. Thus, in the absence of any evidence of a mutual agreement to modify the contract, dismissal of Lessner's complaint for delay damages was appropriate.[2]

Furthermore, as the motion judge noted, the surety did not have greater obligations than APS had under the contract. In disputes such as the one at bar, we have held "[t]he rights of a

---

[2] Because we have determined the contract and the ratification agreement enforceable, as interpreted by the trial judge in dismissing Lessner's contract claims, it follows that Lessner's unjust enrichment claim cannot survive as well.

A-0081-17T3

third-party beneficiary . . . depend upon and are measured by the terms of the bond, the contractual undertaking between the promisor and the promisee."  Ribiera & Lourenco Concrete Constr. Co. v. Jackson Health Care Assocs., 231 N.J. Super. 16, 24 (App. Div. 1989).  "[A] surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by implication or by construction beyond the confines of its contract."  Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 356 (1996) (quoting Monmouth Lumber Co. v. Indem. Ins. Co. of N. America, 21 N.J. 439, 452 (1956)).

Finally, Lessner argues, for the first time on appeal, the delay damages waiver should not be enforced because "APS did not act reasonable and, in fact, acted in bad faith in its dealings with Lessner."  Our Supreme Court has stated:

> It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."
>
> [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).]

Our review of the record reveals Lessner's bad faith argument was not asserted either in its pleadings or argued before the

motion judge.  For these reasons, we decline to consider that claim here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0081-17T3